IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **BEEKEEPERS MILL, LLC,**<br>**Plaintiff,**<br><br>**v.**<br><br>**WELCOME MAT VACATIONS LLC AND LESLIE EGGLESTON,**<br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:24-cv-00633**<br>**Judge Trauger / Frensley** |

**REPORT AND RECOMMENDATION**

Pending before the Court is "Plaintiff's Motion for Default Judgment Against all Defendants" requesting entry of default judgment pursuant to Fed. R. Civ. P. 55(b)(2), filed by Beekeeper's Mill LLC ("Plaintiff"). Docket No. 33. Defendants Welcome Mat Vacations LLC and Leslie Eggleston (collectively, "Defendants") have failed to answer or otherwise respond to the Amended Complaint (Docket No. 9) or the Motion. For the reasons set forth below, the undersigned recommends Plaintiff's Motion be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. The Well-Pleaded Factual Allegations

Because default has been entered by the Clerk pursuant to Rule 55(a) (Docket Nos. 29, 32), Defendants are "deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including jurisdictional averments." *Cincinnati Ins. Co. v. Major*, No. 3:23-CV-00885, 2024 U.S. Dist. LEXIS 254468, 2024 WL 7015678, at *2 (M.D. Tenn. Oct. 8, 2024) (citations omitted). To be "well-pleaded" for purposes of Rule 55(b)(2), such allegations "must at least satisfy Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the basic federal pleading requirement that a complaint shall contain a short and plain statement of the claim

showing that the pleader is entitled to relief." *S. Operators Health Fund v. Sky Limit Equip., LLC*, No. 3:19-CV-00268, 2021 U.S. Dist. LEXIS 232866, 2021 WL 5770876, at *4 (M.D. Tenn. Dec. 6, 2021) (citation modified).

The undersigned finds the following factual allegations in the amended complaint to be well-pleaded under Rule 8(a) and compliant with the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); accordingly, they are accepted as true.

The suit arises under this Court's diversity jurisdiction. *See* Docket No. 9, pp. 1–2. Plaintiff is Beekeepers Mill, LLC, a Missouri Limited Liability Company, and Defendants are Welcome Mat Vacations LLC ("WMV"), a Wyoming Limited Liability Company, and Leslie Eggleston, its owner and managing member and resident of Wilson County, Tennessee. *Id.* at 1.

Plaintiff owns property in the Middle District of Tennessee and "entered into an Agreement with Defendant, in which Defendant would manage real estate owned by Beekeepers for short-term rentals." *Id.* at 2. The Agreement was not signed, but "throughout their dealings, Beekeepers and Defendant each consistently performed their obligations by substantially adhering to the agreement's terms." *Id.* Arising out of this arrangement, Plaintiff brought several counts pertaining to withheld funds and the death of two horses left in Defendant's care: breach of contract (*id.* at 9–10), gross negligence (*id.* at 10–11), trespass to chattels and conversion (*id.* at 11-12), fraudulent misrepresentation (*id.* at 12–13), fraud (*id.* at 13–14), breach of the implied covenant of good faith and fair dealing (*id.* at 14–15), promissory estoppel (*id.* at 15–16), unjust enrichment (*id.* at 16–17), and a consumer protection count (*id.* at 17–18).

The pertinent terms of the Agreement were as follows:

> 10. [O]n the 5th of every month, Defendant would report the gross rental revenue, fees and expenses, and amounts due to both

> Beekeepers and Defendant ("**Owner's Statements**") to Beekeepers. Defendant was to then remit any balance due via direct Owner Funds to Beekeepers.
>
> 11. Beekeepers agreed that Defendant could retain 18% of the owner's proceeds after expenses.

Id. at 2.

Defendants intentionally breached the Agreement in several ways and committed various tortious acts, including: failing to send or delaying in sending monthly Owner's Statements (Id. at 2, 4, 6–7, 9); in Owner's Statements that were sent, reporting Plaintiff's shares of proceeds to be lower than permitted by the Agreement (Id. at 3); deleting online records of several bookings worth thousands of dollars (Id. at 4); failing to deliver any of Plaintiff's shares of proceeds for the entire year of 2023—totaling $156,391[1]—after repeated correspondence regarding missing payments (Id. at 4–8, 9); and neglecting their duty to care for two horses on the property, which caused severe starvation and required them to be euthanized (Id. at 3, 9).

Plaintiff's amended complaint also makes specific factual allegations pertaining to each individual count raised, which are recounted here and modified as needed to remove allegations pertaining to damages and legal conclusions.

The factual allegations in the counts pertaining to the withheld funds are as follows. Plaintiff alleged in its breach of contract count that:

> 20. Defendant willfully and persistently committed material breaches of the Owner Agreement with Beekeepers when they:
>
> > (a) failed to deliver owners' statements;

---

[1] This figure is the amount Defendant Welcome Mat claimed, on a 1099-MISC form, to have paid Plaintiff in rent in 2023. Docket No. 9-8. Plaintiff alleged it never received any payments (Docket No. 9, p. 8) and accordingly claims that the $156,391 reported on the 1099-MISC is the amount withheld from it (*see* Docket No. 9, p. 19).

> (b) failed to pay Beekeepers any proceeds from vacation rentals of the Property ("Owner Funds") since February; and
>
> (c) failed to timely respond to Beekeepers' questions about the missing Owner Funds in and disappearing listings and statements.

Id. at 9–10.

Plaintiff alleged in its fraudulent representation count that:

> 35. Defendant knowingly or without regard to the truth made materially false representations when they:
>
> > (a) falsely communicated that they intended to deliver the owner's proceeds to Beekeepers;
> >
> > (b) falsely reported booking information and owner's proceeds to Beekeepers;
> >
> > (c) removed booking information from the owner's portal so that Beekeepers would not know who was staying at the property;
> >
> > (d) falsely claimed that they were sending Owner funds to Beekeepers; and
> >
> > (e) falsely claimed that they were unaware of the statements made by Beekeepers addressing these concerns.
>
> 36. Beekeepers reasonably relied on these misrepresentations, initially believing them to be ordinary delays and miscommunications that occur in the course of business.

*Id.* at 12.

Plaintiff alleged in its fraud count that:

> 39. On information and belief, Defendant falsely made multiple representations directly to Beekeepers, including that Defendant:
>
> > (a) intended to actually send Beekeepers the owed Owner Funds;
> >
> > (b) intended to and was capable of performing its obligations according to the Agreement,

> (c) intended to and was capable of attending to the livestock on the Property.
>
> 40. Upon information and belief, Defendant knew at the time of each representation that each was a false representation and acted maliciously, with conscious indifference to the consequences and with the specific intent to defraud and cause harm to Beekeepers and other third parties associated with this transaction.
>
> 41. Beekeepers reasonably relied on these misrepresentations, initially believing them to be ordinary delays and miscommunications that are not unreasonable when in the early stages of engaging in a business relationship.
>
> 42. Upon information and belief, Defendant maliciously, with conscious indifference to the consequences, offered false representations, including Beekeepers Plaintiff the false hope of the return of its Owner Funds with the specific intent to cause harm and enrich Defendant.
>
> 43. Upon discovery of Defendants' fraud, Beekeepers promptly rescinded the Contract and filed this Complaint with the Court.

*Id.* at 13.

Plaintiff alleged in its breach of the implied covenant of good faith and fair dealing count that:

> 47. Beekeepers demonstrated substantial compliance with the spirit and the letter of the Agreement when it:
>
> (a) signed the Agreement with Defendant;
>
> (b) permitted Defendant to enter onto the property and collect rents;
>
> (c) in a display of good faith, agreed to allow Defendant to cure its noncompliance by requesting that Defendant resend the missing Owner Funds, and
>
> (d) in a display of good faith, attempted to work patiently with Defendant while Defendant continued to abscond with Beekeepers' share of rental income.
>
> 48. Defendant demonstrated bad faith in its continued failure to comply with the spirit of their Agreement by their acts or omissions when Defendant failed to:

> (a) Properly manage and report rental income for Beekeepers;
>
> (b) Send owner funds to Beekeepers; and
>
> (c) Manage the affairs and upkeep of the Property on behalf of Beekeepers

*Id.* at 14–15.

Plaintiff alleged in its promissory estoppel count that:

> 51. Defendant made promises to:
>
> (a) Properly manage and report rental income for Beekeepers;
>
> (b) Send owner funds to Beekeepers; and
>
> (c) Manage the affairs and upkeep of the Property on behalf of Beekeepers
>
> 52. These promises were neither ambiguous, vague, nor unenforceable.
>
> 53. Beekeepers reasonably relied on these false promises to its detriment.

*Id.* at 15–16.

Plaintiff alleged in its unjust enrichment count that:

> 56. Beekeepers conferred upon Defendant a measurable benefit in the payment by Beekeepers to Defendant of the Owner Funds.
>
> 57. Defendant consciously accepted the benefit conferred by accepting the Owner Funds from Beekeepers.
>
> 58. Beekeepers' payment to Defendant was not conferred officiously or gratuitously, nor was it gifted to Defendant by Beekeepers.
>
> 59. Defendant was unjustly enriched when it kept the Owner Funds in contravention of the Agreement upon reaching the anticipated completion date.

*Id.* at 16.

Plaintiff alleged in its consumer protection count that:

> 62. Defendant advertised its services to Beekeepers as property management for short-term vacation rentals.
>
> 63. Defendant never actually intended to provide Owner Funds to Beekeepers, but to instead engage in a pattern of fraudulent misinformation to Beekeepers to excuse numerous delays in payment, all while erasing evidence of bookings, allegedly changing to different systems than were originally in use, and withholding as much of Beekeepers' Owner Funds as possible.
>
> 64. Defendant . . . advertis[ed] services without the intent to provide them as advertised.
>
> 65. Defendants' failure to provide services as advertised after being specifically asked to do so by Beekeepers after numerous failures indicates that Defendants' [failure] was knowing and intentional.

*Id.* at 17.

The factual allegations pertaining to the lost horses are as follows. Plaintiff alleged in its gross negligence count that:

> 23. Defendant had a duty to Beekeepers to feed and care for the horses on the Property as evidenced by their billing Beekeepers for animal care and actions in accordance with the Owner Agreement.
>
> 24. Defendant breached their duty to feed and care for the horses on the Property by starving them to the point at which they had to be euthanized.
>
> 25. Defendant breached their duty to feed and care for the horses in a way that was willful, wanton, and with reckless disregard for the well-being of Beekeepers and Beekeepers' horses.

*Id.* at 10.

Plaintiff alleged in its trespass to chattels and conversion count that:

> 28. It is indisputable that Beekeepers was the owner of the horses on the property.
>
> 29. Defendants were the only parties Beekeepers entrusted to care for the horses on the property.
>
> 30. By neglecting to appropriately care for the horses and by falsely informing Beekeepers that the horses were in good condition, Defendant intentionally appropriated Beekeepers' chattels in a way

> that defied Beekeepers' rights to exercise dominion and control over its chattels.
>
> 31. Beekeepers was dispossessed of its property by the mortal starvation of its horses.
>
> 32. Defendants' actions were wanton, willful, malicious, or at least reckless, because Defendant intentionally told Beekeepers that the horses were in good condition, when they were actually starving, and had been the subject of guest complaints for a year.

*Id.* at 11.

### B. Procedural History

Plaintiff filed this lawsuit on May 21, 2024. Docket No. 1. In its amended complaint, Plaintiff requested, *inter alia*, that both Defendants be held jointly and severally liable for compensatory damages of no less than $499,173; prejudgment interest accruing daily since October 2, 2023; post judgment interest; punitive damages; and reasonable attorneys' fees against. Docket No. 9, pp. 19–21. Judge Trauger scheduled an initial case management conference for December 16, 2024. Docket No. 6. Having been unable to successfully serve either of Defendants, Plaintiff filed a motion on December 4, 2024, to postpone the conference to a date to be set after Defendants had been properly served (Docket No. 14), which was granted the same day (Docket No. 15).

On May 8, 2025, after continuing lack of success in serving Defendants, Plaintiff filed two motions. The first requested an extension of time to serve Defendants. Docket No. 18. The second requested leave to serve Defendants by alternative means, namely, by sending the summonses and complaints to Eggleston's email and posting them at an address which was Eggleston's most recent documented residence and WMV's registered mailing address. Docket No. 19. These motions were supported by affidavits of process server James Grady, who averred thirteen unsuccessful prior attempts to serve either Defendant. Docket Nos. 18-1; 19-1. Both motions were granted on May 9,

2025 (Docket Nos. 20; 21), and on May 20, 2025, Plaintiff filed proofs of service in the approved manners for both Defendants (Docket Nos. 25; 26).

After Defendants' subsequent failure to respond, Plaintiff moved for and was granted an entry of default. Docket Nos. 30; 32. Plaintiff then filed the Motion for Default Judgment now pending before the Court. Docket No. 33. In support of the Motion, Plaintiff filed a Memorandum of Law (Docket No. 33-4) and a Declaration of Benjamin Kuenzel, the sole member of Plaintiff (Docket No. 33-1). Neither Defendant responded to the Motion.

## II. PLAINTIFF'S MOTION

Plaintiff requests that the Court enter judgment finding both Defendants liable on all counts in the complaint, which are reiterated in the Memorandum. *See* Docket No. 33-4, pp. 4–6. Plaintiff argues the well-pleaded factual allegations in the complaint establish liability for both Defendants, including Eggleston, because "all the actions of the Defendant WMV[] were also actions directly by Defendant Eggleston" and "Eggleston is responsible for her own actions, even if she were acting on behalf of WMV." *Id.* at 5.

Plaintiff also seeks default judgment for damages, asking the Court to exercise its discretion to do so without an evidentiary hearing and repeating its requests for compensatory damages of no less than $499,173[2]; prejudgment interest accruing interest daily since October 2, 2023; post judgment interest; punitive damages; and reasonable attorneys' fees. Docket Nos. 33-4, p. 8; 9, pp. 19–21. Plaintiff argues that this is an appropriate case to forgo an evidentiary hearing because "an adequate record has been made via affidavits and documentary evidence to show statutory

[2] Plaintiff's Memorandum states $519,173, but this appears to be a miscalculation of its accompanying computation of 156,391 x 3 + 10,000 x 2. *See* Docket No. 33-4, p. 7.

damages." Docket No. 33-4, p. 4 (quoting *Capitol Records v. Rita Carmichael*, 508 F. Supp. 2d 1079, 1085 (S.D. Ala. 2007)).

## III. ANALYSIS

Following a clerk's entry of default under Fed. R. Civ. P. 55(a), a plaintiff may request default judgment and an award of damages under Rule 55(b). As discussed above, "the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability." *Cincinnati Ins. Co.*, 2024 U.S. Dist. LEXIS 254468, 2024 WL 7015678, at *2 (citations omitted). However, "the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (internal quotation marks omitted)).

Accordingly, Rule 55(b)(2) provides that the district court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to: . . . (B) determine the amount of damages." "This provision, by its terms, allows but does not require the district court to conduct an evidentiary hearing." *Vesligaj*, 331 F. App'x at 354. It is within a district court's discretion to conduct or forgo a hearing. *Id.* at 355 ("[a] district court's determination that a hearing is not necessary to determine the amount of damages under Rule 55(b)(2) is reviewed for abuse of discretion.") (citing *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.")).

## A. Liability

Plaintiff argues that both Defendants, including Eggleston individually, should be held liable on all counts in the complaint because "all the actions of the Defendant WMV[] were also actions directly by Defendant Eggleston." Docket No. 33-4, p. 5.

The undersigned recommends holding both Defendants liable on the common law tort counts and the consumer protection count. However, only WMV should be liable for breach of contract and breach of the implied covenant of good faith and fair dealing. Neither Defendant should be liable for the promissory estoppel and unjust enrichment counts because neither of these claims are applicable in this case.

### 1. Common Law Tort Counts

The undersigned recommends holding both Defendants liable for the counts of misrepresentation, fraud, trespass to chattels, and conversion. Eggleston was acting as an agent for WMV because "Eggleston is an owner and managing member of [WMV]" (Docket No. 9, p.1) and under Tennessee's LLC Act, "[e]ach manager is an agent of the LLC for the purpose of its business." Tenn. Code Ann. § 48-249-401. She should therefore be liable for the tort counts because it was her commissions or omissions—which all pertain to WMV's transactions with and obligations to Plaintiff, and hence "its business"—that support liability, and "[i]t is settled law that an agent cannot escape liability for tortious acts, including fraud or misrepresentation, against third persons simply because the agent was acting within the scope of the agency." *Brungard v. Caprice Recs., Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980) (citing *Howard v. Haven*, 198 Tenn. 572, 281 S.W.2d 480 (1955), superseded by statute on other grounds as stated in *Cole v. Arnold*, 545 S.W.2d 95, 97 (Tenn. 1977)).

Additionally, WMV should be held liable for these torts because LLCs are liable for the torts of their agents. *See Tennessee Racquetball Invs., Ltd. v. Bell*, 709 S.W.2d 617, 623 (Tenn. Ct. App. 1986) (holding corporation liable for individual defendant's tort because "[i]t is hornbook law that the active agent committing a tort is jointly liable with his principal who is vicariously liable"). Principals only escape liability for an agent's torts in three instances:

> (1) when the agent has been exonerated by an adjudication of non-liability, (2) when the right of action against the agent is extinguished by operation of law, or (3) when the injured party extinguishes the agent's liability by conferring an affirmative, substantive right upon the agent that precludes assessment of liability against the agent.

*Creech v. Addington*, 281 S.W.3d 363, 374 (Tenn. 2009) (quoting *Johnson v. LeBonheur Children's Medical Center*, 74 S.W.3d 338 (Tenn. 2002)). Because WMV's circumstances do not "fall within one of the protected categories, [it] may be held vicariously liable to [Plaintiff] based upon the fraudulent misrepresentations," gross negligence, trespass to chattels, and conversion committed by Eggleston. *Creech*, 281 S.W.3d at 374.

**2. Consumer Protection Count**

The undersigned recommends holding both Defendants liable for the consumer protection count. Section 47-18-109(a)(1) of the Tennessee Consumer Protection Act ("TCPA") permits private actions to recover "an ascertainable loss of money or property . . . as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b)," and § 47-18-104(b)(9) describes "[a]dvertising goods or services with intent not to sell them as advertised" as such a deceptive act or practice.

The Defendants violated this provision because WMV, through the actions of Eggleston, "advertised its services to Beekeepers as property management for short-term vacation rentals . . . without the intent to provide them as advertised" (Docket No. 9, p. 17). Both Defendants should

be held liable for the same reasons they should both be liable under the common law tort counts because a violation of the TCPA has repeatedly been characterized as a tort, so the same principles of personal and vicarious liability should therefore apply. *See Hagan v. Phipps*, No. M2010-00002-COA-R3-CV, 2010 Tenn. App. LEXIS 606, 2010 WL 3852310, at *5 n.7 (Tenn. Ct. App. Sept. 28, 2010) ("claims under the TCPA have been characterized as tort actions"); *SecurAmerica Bus. Credit v. Schledwitz*, No. W2012-02605-COA-R3CV, 2014 Tenn. App. LEXIS 178, 2014 WL 1266121, at *20 (Tenn. Ct. App. Mar. 28, 2014) ("Two torts were asserted in this case, fraud and a violation of the Tennessee Consumer Protection Act"); *Timoshchuk v. Long of Chattanooga Mercedes-Benz*, No. E2008-01562-COA-R3-CV, 2009 Tenn. App. LEXIS 672, 2009 WL 3230961, at *9 (Tenn. Ct. App. Oct. 8, 2009) ("the TCPA . . . is a remedial statute based in tort").

**3. Contractual Counts**

The undersigned recommends holding only WMV liable for the counts of breach of contract and breach of the implied covenant of good faith and fair dealing because these are contractual claims based upon the Agreement between Plaintiff and WMV, not Eggleston.[3] Although "Eggleston was actively involved in each action" under the contract (Docket No. 33-4, p. 5), this is insufficient to establish her personal liability. As discussed previously, Eggleston was an agent of WMV, and "[w]hen an agent contracts in the name of [her] principal, the principal contracts, and is bound, but the agent is not." *Harvey ex rel. Gladden v. Cumberland Tr. & Inv.*

---

[3] Although the Agreement was never signed (Docket No. 9, p. 2), it is an enforceable contract. "When a party who has not signed a contract demonstrates its assent by performing pursuant to the contract and making payments conforming to the contract's terms, that party is estopped from denying the binding effect of the contract." *Staubach Retail Serv.-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 525 (Tenn. 2005). Here, a contract was created because "throughout their dealings, [Plaintiff] and Defendant each consistently performed their obligations by substantially adhering to the [A]greement's terms." Docket No. 9, p. 2.

*Co.*, 532 S.W.3d 243, 266 (Tenn. 2017) (quoting *Taylor v. Mayo*, 110 U.S. 330, 335 (1884)). Moreover, Plaintiff has not pleaded veil piercing, and the well-pleaded factual allegations do not establish the required elements to pierce the veil. *See Youree v. Recovery House of E. Tennessee, LLC*, 705 S.W.3d 193, 211 (Tenn. 2025). In particular, the facts do not establish the first element: "Control over the entity, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the entity, as to that transaction, had no separate mind, will, or existence of its own." *Id.* The facts that "Eggleston was actively involved in each action" under the contract (Docket No. 33-4, p. 5) and that "[m]ost, if not all, of [Plaintiff's] interactions with [WMV] were through . . . Leslie Eggleston" (Docket No. 9, p. 2) only establish that Eggleston was an agent of WMV, not the requisite control under *Youree*.

For these reasons, the undersigned recommends holding only WMV liable for breach of contract and breach of the implied covenant of good faith and fair dealing.

**4. Promissory Estoppel and Unjust Enrichment**

Neither promissory estoppel nor unjust enrichment is applicable in this case, so the undersigned recommends holding neither Defendant liable on these counts.

Promissory estoppel is available in Tennessee to enforce a promise which does not constitute an enforceable contract. *See Calabro v. Calabro*, 15 S.W.3d 873, 878–80 (Tenn. Ct. App. 1999). Alternatively, promissory estoppel can operate to enforce a deficient modification to an existing contract in certain circumstances. *See Thomas Energy Corp. v. Caterpillar Fin. Servs. Corp.*, No. E2014-00226-COA-R3-CV, 2014 Tenn. App. LEXIS 855, 2014 WL 7366676, at *7 (Tenn. Ct. App. Dec. 26, 2014) ("Tennessee courts have upheld a claim for promissory estoppel, despite the existence of a valid contract" if the promise "operated to expand, not add to or vary the terms of the contract") (citing *Bill Brown Const. Co. v. Glen Falls Co.*, 818 S.W.2d 1, at 11–12

(Tenn. 1991); *Moulds v. James F. Proctor, D.D.S., P.A.*, 1991 Tenn. App. LEXIS 595, 1991 WL 137577, at *2 (Tenn. Ct. App. July 29, 1991) ("Even if the Agreement, as modified, failed to rise to the level of an enforceable contract . . . [t]he doctrine of promissory estoppel bars [the defendant] from denying [its] enforceability"). Because the well-pleaded complaint establishes an enforceable contract and no modification is at issue in this case, promissory estoppel is inapplicable.

Similarly, under an unjust enrichment theory, Tennessee law allows courts to "impose a contractual obligation where there is no contract between the parties or the contract has become unenforceable or invalid, and the defendant will be unjustly enriched unless the court imposes a quasi-contractual obligation." *Fam. Tr. Servs. LLC v. Green Wise Homes LLC*, 693 S.W.3d 284, 304 (Tenn. 2024) (citation modified). Because there is already a contractual obligation in this case, unjust enrichment is inapplicable.

**B. Damages**

As discussed above, Rule 55(b)(2) places it within a district court's discretion to conduct or forgo a hearing to determine the amount of damages granted in default judgment. *See Vesligaj*, 331 F. App'x at 354 (citing *Pope*, 323 U.S. at 12). Courts have awarded damages without an evidentiary hearing where it is possible to "determine the amount of damages by computation from the record before it." *Truex v. Drivers Direct, LLC*, 583 F. Supp. 3d 1033, 1035 (N.D. Ohio 2022). *See also Decker Constr. Co. v. Wesex Corp.*, No. 2:18-CV-00727, 2023 U.S. Dist. LEXIS 88659, 2023 WL 3558196, at *2 (S.D. Ohio May 19, 2023) ("If the damages are calculable or liquidated, then the court will award the calculable damages to the plaintiff without an evidentiary hearing because the facts establishing the damage are not distinct from the facts establishing liability").

*Decker* provides an example of the requisite calculability; there, the plaintiff was a general contractor who sued his client for fraud and breach of contract. 2023 U.S. Dist. LEXIS 88659,

2023 WL 3558196. at *2. Their agreement required the client to use the plaintiff's funds to pay the subcontractors directly, but the client did not do so and kept the money owed to the subcontractors for itself. *Id.* at *1. The subcontractors asserted claims against the plaintiff, which were settled for $415,400, and some had liens against the plaintiff's project, totaling $7,465 in surety bonds which they collected. *Id.* at *2. Accordingly, the court held that it could "determine the appropriate damages without an evidentiary hearing" and awarded $422,865, reasoning that the plaintiffs had "provided evidence establishing the calculability of their damages . . . [b]ecause the resolution of the claims and the surety bonds were for a lump sum or fixed costs." *Id.*

**1. Damages for the Withheld Funds**

The undersigned recommends holding both Defendants jointly and severally liable for a base award of $156,391 for the withheld funds because these damages are easily calculable. Plaintiff asserted that it received no funds for the entirety of 2023, but on its 2023 tax return, WMV claimed it paid Plaintiff $156,391. Docket Nos. 9, pp. 8–9; 9-8. This is satisfactory proof of the amount that WMV withheld from Plaintiff, and just as in *Decker*, it is a "lump sum or fixed cost[]." 2023 U.S. Dist. LEXIS 88659, 2023 WL 3558196, at *2. Accordingly, the damages for the withheld funds are sufficiently calculable as $156,391.

**2. Treble Damages**

The undersigned recommends awarding treble damages for the withheld funds. Because Defendants are liable for the consumer protection count, § 47-18-109(a)(3) permits the Court to "award three (3) times the actual damages sustained" if the violation was willful or knowing, and the well-pleaded complaint provides ample proof that it was. Plaintiff alleged "Defendant never actually intended to provide Owner Funds to Beekeepers, but to instead engage in a pattern of fraudulent misinformation to Beekeepers to excuse numerous delays in payment, all while erasing

evidence of bookings . . . and withholding as much of Beekeepers' Owner Funds as possible." Docket No. 9, p. 17. These facts demonstrate a willful or knowing violation. Plaintiff also argues, and the undersigned agrees, that "Defendants' failure to provide services as advertised after being specifically asked to do so by Beekeepers after numerous failures indicates that Defendants' violation of . . . § 47-18-104(b)(9) was knowing and intentional." *Id.*

To assist the Court in deciding whether to treble or not, § 47-18-109(a)(4) provides:

> In determining whether treble damages should be awarded, the trial court may consider, among other things:
>
> > (A) The competence of the consumer or other person;
> >
> > (B) The nature of the deception or coercion practiced upon the consumer or other person;
> >
> > (C) The damage to the consumer or other person; and
> >
> > (D) The good faith of the person found to have violated this part.

The undersigned recommends trebling, relying primarily on the latter three factors: (B) the nature of the deception alleged in the complaint was malicious, deliberate, and recurrent, persisting through numerous requests to give accurate information and to comply with the terms of the agreement; (C) the damage to Plaintiff is significant, as it was deprived of all profits it was entitled to receive from Defendants' use of its property in 2023; and (D) the misconduct alleged in the complaint shows no indication of good faith. Thus, the damages for the withheld funds should be trebled by three times, for a total of $469,173 before interest against both Defendants jointly and severally.

**3. Damages for the Dead Horses**

The undersigned recommends denying the requested amount for the horses. Plaintiff requests $20,000, alleging that each horse was worth $10,000. Docket No. 9, p. 19. Plaintiff's

evidence for this amount is the sworn declaration of Benjamin Kuenzel, the sole member of Plaintiff, in which he states, "[t]hese horses were valued at $10,000 each from my own personal knowledge of their value." Docket No. 33-1, p. 2. Plaintiff argues this is sufficient evidence because "Kuenzel is competent to testify as to the value of the horses as a lay witness under Fed.R.Evid. 701 and because it is based on his own personal knowledge of the value." Docket No. 33-4, pp. 7–8 (citing *City of Pikeville v. Broan-Nutone, LLC*, No. 15-71-ART, 2016 U.S. Dist. LEXIS 62682, 2016 WL 2843916 (E.D. Ky. May 10, 2016).

Rule 701 of the Federal Rules of Evidence permits a lay witness to testify "in the form of an opinion . . . that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

In *City of Pikeville*, which Plaintiff relies on, the Eastern District Court of Kentucky permitted the plaintiff to proffer lay witness opinion testimony to establish the damages to the plaintiff's truck. 2016 U.S. Dist. LEXIS 62682, 2016 WL 2843916, at *1. The witness was "the claims adjuster who dealt with the insurance claim," and detailed the personal knowledge she relied on to calculate the value of the truck:

> [S]he first reviewed pictures of the damaged truck, its Certificate of Title and Certificate of Registration, and a list of information—such as its mileage and specifications—provided by the City of Pikeville. . . . She then found four similar trucks in publications that advertise trucks for sale and averaged these values. . . . After adding an additional $982.63 based on invoices Pikeville submitted for things like LED lights and the CB radio, she arrived at a value of $116,820.13[.]

*Id.* The court held that the opinion was admissible under Rule 701, finding it was rationally based on her perception, helpful in determining the value of the truck, and not based on specialized knowledge. *Id.* at *2. The court explained that the witness "based her opinion only on her personal, particular work experience" and that the "valuation process resulted from a process of reasoning

familiar in everyday life," which supported its helpfulness and showed that it was not based on knowledge within the scope of 702. *Id.* at *2–3 (citation modified).

Here, Kuenzel's opinion is insufficient under Rule 701 because Plaintiff provides no information which would allow the Court to determine whether Kuenzel's opinion is rationally based on his perception; it is, therefore, also unhelpful in determining damages. In contrast to the witness in *City of Pikeville*, who detailed the facts she relied on to form her opinion, Kuenzel merely stated that his opinion was "from [his] own personal knowledge of [the horses'] value" (Docket No. 33-1, p. 2) without describing the facts which form the basis of his opinion.

The Court allowed Plaintiff to file a supplemental submission in support of its request for damages related to the horses. The Plaintiff filed a supplemental submission indicting "it does not have additional information about the valuation of the horses because the horses were destroyed." Docket No. 36, p. 2. The Plaintiff further indicates it withdraws its request for damages to the extent the previous declaration is not sufficient. Id.

The issue in this case is not only a matter of admissibility under the rules of evidence, but also whether the evidence is convincing enough for the Court to award an amount of damages without an evidentiary hearing. Given that Plaintiff has no further information regarding valuation, conducting an evidentiary hearing would serve no purpose. Even if Kuenzel's opinion were admissible, it is inadequate to inform a damage award because it is unsubstantiated. Thus, the requested amount of $20,000 for the horses should be denied.

**4. Punitive Damages**

The undersigned recommends denying punitive damages because treble damages are recommended pursuant to § 47-18-109 and "the court may not award exemplary or punitive damages for the same unfair or deceptive practice." § 47-18-109(a)(3).

**5. Attorneys' Fees**

Since Defendants violated the TCPA, an award of reasonable attorneys' fees is permitted under § 47-18-109(e)(1), but "[t]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Conserv Equip. Leasing, LLC v. Haddco*, No. 3:22-CV-00404, 2023 U.S. Dist. LEXIS 241237, 2023 WL 11897595, at *2 (M.D. Tenn. Mar. 8, 2023) (quoting *Graceland Fruit, Inc. v. KIC Chemicals, Inc.*, 320 Fed. Appx. 323, 328 (6th Cir. 2008)). Accordingly, attorneys' fees have been awarded in default judgments where plaintiffs' counsel request a dollar amount calculated from a reasonable number of hours worked at a reasonable hourly rate. *See Long v. Morgan*, 451 F. Supp.3d 830, 837 (M.D. Tenn. 2020) (awarding $17,500 for 50 hours worked at a rate of $350 an hour plus unreimbursed litigation expenses); *Fleming v. Martin*, No. 3:22-CV-00990, 2025 U.S. Dist. LEXIS 8622, 2025 WL 223772, at *3–4 (M.D. Tenn. Jan. 16, 2025), report and recommendation adopted, No. 3:22-CV-00990, 2025 U.S. Dist. LEXIS 45841, 2025 WL 802991 (M.D. Tenn. Mar. 13, 2025) (awarding $4,826.72 for 23.35 hours worked at a rate of $200 an hour plus miscellaneous expenses).

At the direction of the Court, the Plaintiff filed a supplemental submission in support of its request for attorney's fees and costs. Docket No. 36. Specifically, Plaintiff submitted two separate declarations, the first on behalf of counsel "who initially represented the Plaintiff" and the second by counsel "who substituted for Boon Legal LLC." Docket Nos. 36-1 and 36-2.

**a. Woolf Fee Request**

Attorney Michael Woolf filed a declaration in support of his requests for attorney's fees on behalf of the firm Boon Legal LLC. Docket No. 36-1. Woolf requests an award in the amount of $47,450.00 for services performed from September 2023 through December 2024. Id. at p. 5.

Woolf includes a billing statement reflecting fees charged at a flat rate during the relevant time. Id. The declaration states that the flat monthly fee was customarily charged by the firm and that the client was billed and incurred fees under the terms of its fee agreement. Id. Counsel contends that the monthly fee charged is consistent with and does not exceed fees charged by attorneys of comparable skill, experience and reputation for similar litigation services in the Middle District of Tennessee. Id at p. 6.

Counsel asserts that the original flat fee of $1,875.00 per month reflects approximately 4.2 total hours at a rate of $450.00 per hour. Id. The flat rate of $3,995.00 per month represents approximately 8.8 total hours at $450.00 per hour. Id at p. 7. The total fee requested of $47,450 is approximately 105 hours at $450.00 per hour. Id. Counsel asserts that the flat monthly fee charged is reasonable in light of the factors the Court must consider in determining a reasonable fee award.

Notwithstanding counsel's representations about the number of hours and rate per hour, this calculation is literally just a monthly flat fee multiplied by a certain number of months as part of the "monthly litigation plan." While the declaration describes these amounts as "comparable" to the amount that would be earned by working a certain number of hours, there is not an actual accounting of hours worked.

The problem with Plaintiff's fee request is that it does not state the number of hours actually worked on the litigation. While there is no question that attorney time was expended by Mr. Woolf and his firm in this matter, the Court has nothing to assess the actual work performed, time involved in doing so, and thus whether the amount of time or hourly rate are reasonable. Because the Court has no information regarding the amount of time actually expended it is impossible to determine whether the time expended was reasonable or not. Likewise, because the hourly rate is premised upon an estimated amount of time it is impossible to determine if the actual per hour rate is

reasonable or not.

In light of these deficiencies and because counsel has provided no legal authority for the Court to determine that a flat fee is reasonable or constitutes an acceptable alternative to the traditional lodestar method for determining reasonable fees, the Court has no basis to make a determination that the requested fees are reasonable and must deny the request, as to Mr. Woolf and the Boon firm.

**b. Cain Fee Request**

Attorney Charles Cain entered an appearance in this case on May 8, 2025. Docket No. 17. Thereafter, all pleadings in this matter have been filed by Mr. Cain. While it is not clear from the docket, Plaintiff's supplemental submission indicates that Cain "substituted" as counsel for Boon Legal LLC at this time. Docket No. 36. Cain's declaration in support of his fee request indicates his experience and requests an award of $8,360.00 for a total amount of 20.9 hours at a rate of $400.00 per hour. Docket No. 36-2.

The Court has reviewed the submission considering it in light of the applicable legal standard and determines that the hourly rate requested in the amount of $400.00 per hour is reasonable and consistent with prevailing market rates charged in this district by counsel of comparable experience. Further, the itemization of time expended in this matter appears to be reasonable. For these reasons, the undersigned recommends that Plaintiff be awarded an amount of $8,360.00 for attorney's fees based on the declaration of Charles M. Cain, II.

**Prejudgment Interest**

Plaintiff requests prejudgment interest accruing each day since October 2, 2023 "at the maximum legal rate." Docket Nos. 9, pp. 19, 21; 33–4, p. 7. The undersigned recommends granting

this request at a rate of 10% per annum, the maximum legal rate under Tenn. Code Ann. § 47-14-123.

"In diversity cases in this Circuit, . . . state law governs awards of prejudgment interest." *Est. of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000). In Tennessee, "[p]rejudgment interest, . . . as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." § 47-14-123.

A decision to award prejudgment interest "is within the sound discretion of the trial court," *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998), and the Supreme Court of Tennessee has explained the three principles which should guide the decisions of trial courts:

> Foremost are the principles of equity. . . . Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case. In reaching an equitable decision, a court must keep in mind that *the purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing*.
>
> . . .
>
> In addition to the principles of equity, two other criteria have emerged from Tennessee common law. The first criterion provides that prejudgment interest is allowed when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds. . . . The second provides that interest is allowed when the existence of the obligation itself is not disputed on reasonable grounds.
>
> . . .
>
> The test for determining whether the amount of damages is certain is . . . whether [it] is ascertainable by computation or by any recognized standard of valuation.

*Id.* at 927, 928 (emphasis added) (internal citations omitted).

Applying these three principles, the undersigned recommends prejudgment interest be granted. Awarding prejudgment interest is equitable in this case because it is necessary to fully compensate Plaintiff "for the loss of the use of funds to which [it] was legally entitled." *Id.* at 927.

The undersigned acknowledges that Plaintiff is already being awarded an amount higher than the damages it sustained from the withheld funds, with or without interest, via the award of treble damages. However, this has no bearing on the question of compensation because the "allowance for treble damages [under § 47-18-109(a)(3)] is intended to be punitive rather than compensatory." *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 907 (Tenn. 1999) (citations omitted). The treble damages are therefore merely a means to calculate punitive damages, using the compensatory damages as a measure. In fact, the statute states that "the court may award three (3) times the *actual damages sustained*, § 47-18-109(a)(3) (emphasis added), and the "actual damages sustained" includes "the loss of the use of funds to which [Plaintiff] was legally entitled." *Myint*, 970 S.W.2d at 927. Moreover, the other two principles weigh in favor of granting prejudgment interest because the damages are certain/calculable, as discussed above, and the obligations Defendants had—to honor the Agreement and refrain from committing tortious acts—are not disputable.

Accordingly, the undersigned recommends awarding prejudgment interest in the maximum amount of 10% per annum per T.C.A. § 47-14-123.

**6. Post judgment Interest**

Plaintiff also requests post judgment interest accruing each day "at the maximum legal rate." Docket Nos. 9, pp. 21.

"In diversity cases in this Circuit, federal law controls post judgment interest . . . ." *Riddle*, 421 F.3d at 409. "By federal statute, post judgment interest is allowed on all money judgments." *Hoover v. Provident Life & Acc. Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002) (citing 28 U.S.C. § 1961). Moreover, "the statute mandates the imposition of post-judgment interest, thus removing the award of such interest from the discretion of the District Court." *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002) (citation modified).

The undersigned therefore recommends awarding post judgment interest in an amount to be calculated according to 28 U.S.C. § 1961:

> (a) . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.
>
> (b) Interest shall be computed daily to the date of payment . . . and shall be compounded annually.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Default Judgment Against All Defendants (Docket No. 33) be **GRANTED IN PART and DENIED IN PART**. Specifically, the undersigned recommends holding both Defendants jointly and severally liable to Plaintiff for an amount equal to $469,173 with prejudgment interest accruing at 10% since October 2, 2023, plus post judgment interest at a rate to be calculated pursuant to 28 U.S.C. § 1961, based upon the following recommendations:

1. Hold both Defendants liable for misrepresentation, fraud, trespass to chattels, conversion, and violating § 47-18-109(a)(1) of the Tennessee Consumer Protection Act.

2. Hold WMV liable for breach of contract and breach of the implied covenant of good faith and fair dealing.

3. Hold neither Defendant liable for promissory estoppel nor unjust enrichment.

4. Grant a base award of $156,391 for the withheld funds against both Defendants jointly and severally.

5. Pursuant to Tenn. Code Ann. § 47-18-109(a)(3)–(4), treble by three times the base award for the withheld funds for a total of $469,173 before interest against both Defendants jointly and severally.

6. Deny the requests for $20,000 for the lost horses and punitive damages.

7. Deny in part and grant in part the request for attorney's fees awarding the amount of $8,360.00.

8. Grant prejudgment interest at the maximum rate of 10% per annum under Tenn. Code Ann. § 47-14-123.

9. Award post judgment interest calculated pursuant to 28 U.S.C. § 1961.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**